IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Housing Authority,              :
                                        : No. 2391 C.D. 2015
                    Appellant           : Argued:  May 13, 2016
                                        :
            v.                          :
                                        :
Stephen Polaha                          :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                 FILED:  August 11, 2016


        Chester Housing Authority (Authority) appeals from the October 22, 2015, order of the Court of Common Pleas of Delaware County (trial court) that affirmed the final determination of the Office of Open Records (OOR) and ordered the Authority to provide Stephen Polaha with a list of addresses of participants in the Housing Choice Voucher Program (HCVP).  We affirm.


        The HCVP is a federally-funded housing program regulated by the United States Department of Housing and Urban Development (HUD).  (Trial Ct. Op., 1/14/16, at 5.)  The Authority administers the HCVP, which provides rental assistance to low-income families.  (*Id.* at 6.)

Polaha, the solicitor for Chester Township, sent a letter dated October 14, 2014, to the Authority under the Right-to-Know Law (RTKL),[1] requesting "[a] list of properties in the Township . . . where the tenant occupying the dwelling on the property receives Housing Choice Voucher Assistance . . . from the Authority, the list to include the address of the property, and the name and address of the property owner." (Ex. P-1.) Polaha did not request the names of those occupying the properties or the names of those receiving assistance. (*Id.*) Polaha explained that Chester Township requires yearly inspections of tenant-occupied units and an inspection each time a unit is newly rented. On October 21, 2014, the Authority responded to the request and provided a chart listing 74 properties by unit identification number, census track number, owner's name, owner's address, whether the property had a certificate of occupancy, and the date the property was last inspected. (Trial Ct. Op., 1/14/16, at 2.)

By letter dated October 24, 2014, Polaha requested "[a] list of the property addresses in the Township . . . which are owned by the individuals and entities set forth on the list you previously provided." (Ex. P-3.) The Authority responded on October 27, 2014, stating that "[t]he home addresses of participants in the [HCVP] are not subject to disclosure . . . . This information is exempt from disclosure." (Ex. P-4.)

On October 30, 2014, Polaha appealed to the OOR. The OOR issued a final determination on November 4, 2014, granting Polaha's request and requiring the Authority to disclose all responsive records. On December 29, 2014, the Authority

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

filed a petition for review of the OOR's final determination and requested a *de novo* hearing.

At the hearing, Mary Margaret Militello, the Authority's HCVP director since 2004, testified. Militello stated that she created the chart provided to Polaha that identified the owners of the properties. Militello testified that the Authority does not maintain a separate list of HCVP-assisted property addresses. Rather, the Authority maintains information regarding the HCVP by program participant, not by home address. (Trial Ct. Op., 1/14/16, at 8.)

Militello testified that the Authority maintains both physical and electronic files. To compile a list of the home addresses of HCVP recipients, the Authority would have to physically review 1,500 files, which would be a burdensome task. Militello admitted that the Authority does maintain HCVP information in an electronic database, including the unit address, the unit size, and the names of the owner and tenant. Militello stressed, however, that the system is new and the Authority still relies on paper records. (*Id.* at 8-9.)

Militello further testified that HUD forms require the Authority to keep information as to HCVP participants private and confidential. She also testified that the requested information is exempt from disclosure under the RTKL because such disclosure would inevitably identify individuals who receive social services, identify the addresses of children under 17 years of age, reveal personal financial information, and likely result in a risk of physical harm. Further, disclosure of the requested

information would violate the federal Privacy Act[2] and a recipient's constitutionally-protected right to privacy.  (*Id*. at 6-7.)

The trial court determined that the Authority could search its database and provide the unit address, the unit size, name of the owner, and name of the tenant, which the Authority could then redact.  Further, the trial court determined that the requested information was not exempt from disclosure under the RTKL or any other law and ordered the Authority to produce the requested information.  This appeal followed.[3]

Initially, the Authority argues that creating and producing a list of home addresses of HCVP recipients would contravene section 705 of the RTKL, 65 P.S. §67.705.

Section 705 of the RTKL provides that "[w]hen responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record."  65 P.S. §67.705.  To establish the nonexistence of a record under section 705 of the RTKL, an agency may provide sworn testimony by an agency official who would have

---

[2] 5 U.S.C. §552(a).

[3] This court's review is limited to determining whether the trial court's findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion. *Fort Cherry School District v. Coppola*, 37 A.3d 1259, 1261 n.2 (Pa. Cmwlth. 2012).

4

knowledge of the particular records or files. *See Moore v. Office of Open Records,* 992 A.2d 907, 908-09 (Pa. Cmwlth. 2010).

Militello testified that she is the most knowledgeable person at the Authority on the particular records, files, and information that the Authority maintains. Militello testified that the Authority does not maintain a list of HCVP-assisted property addresses. The Authority maintains information in physical files, which are organized by tenant, not by property address. Although the Authority maintains some HCVP information in an electronic database, that database is incomplete.

The Authority argues that the trial court erred by ignoring Militello's testimony and concluding that the Authority failed to establish that it could not search the database and provide the requested information.

Polaha argues that the Authority has the requested information. Exhibit P-23 is a document titled "Inspection Checklist," which contains information on potential housing units for HCVP recipients, including the property address and address of the property owner. A separate "vendor file" exists for all properties, which contains the owner's name, address, and taxpayer identification. Moreover, Militello stated that the addresses of the residents and owners are in a searchable database.

We agree with Polaha that despite Militello's claims that the computer system is new the information requested exists in a searchable data base. "[D]rawing

information from a database does not constitute creating a record under the [RTKL]." *Department of Environmental Protection v. Cole*, 52 A.3d 541, 547 (Pa. Cmwlth. 2012). Because of Militello's admission that the information exists in a searchable database, the trial court properly concluded that the Authority did not meet its burden of proving that the records do not exist.

Next, the Authority argues that a list of the home addresses of HCVP recipients is exempt from disclosure pursuant to section 708(b)(28)(i) of the RTKL because it will "identify[] . . . individual[s] who appl[y] for or receive[] social services." 65 P.S. §67.708(b)(28)(i). Here, Polaha specifically requested a list of addresses of tenants who receive HCVP assistance. The Authority maintains that a person's identity can be determined by knowing his or her home address because further steps can be taken to identify the individual living at that house.

The Authority argues that in determining that the addresses are not exempt the trial court erroneously relied on *Housing Authority of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012). In *Van Osdol*, the requester sought "'the addresses and owner names for all Section 8 properties administered by the . . . [Pittsburgh] Authority.'" *Id.* at 211 (citation omitted). The Pittsburgh Authority denied the request and the requestor appealed to the OOR. *Id.* The OOR concluded that the requested documents were not exempt from disclosure because "'[t]he name of the landlord or the address of a section 8 eligible property does not, by itself, identify an individual who receives social services.'" *Id.* at 212 (citation omitted). Rather, additional steps must be taken to identify the Section 8 tenant. *Id.* On appeal, the trial court agreed and dismissed the Pittsburgh Authority's

6

appeal and determined that the Pittsburgh Authority failed to prove that the requested information was exempt under the RTKL. *Id.*

This court held that the addresses of Section 8 properties and the names of the owners of these properties are not exempt from disclosure "under [s]ection 708(b)(6)(i)(C), (28)(i) and (ii)(A) and (30) of the [RTKL]." *Id.* at 216. We noted, however, that "[t]here may be some cases in which the evidence establishes that disclosure of public records" will easily lead to disclosure of protected information, "but no such evidence was presented here." *Id.*

Unlike *Van Osdol*, where no hearing occurred, the Authority here argues that it provided the trial court with testimonial and documentary evidence establishing that disclosing the requested addresses "will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent." *Id.* However, we agree with Polaha that *Van Osdol* is controlling and "[t]he requested information does not itself identify individuals who apply for or receive social services or the type of social services received by those individuals." *Id.* As in *Van Osdol*, the list of addresses would not provide the names of HCVP recipients.

The Authority relies on dicta in *Van Osdol*, wherein the court stated that disclosure of records that are not facially exempt may lead to disclosure of protected information. *Id.* However, Polaha is seeking the same information that was

7

requested in *Van Osdol*, which this court found was not exempt. "That properly disclosed public records may enable the requestor or others, by doing further research, to learn information that is protected from disclosure is not generally a sufficient basis to refuse disclosure." *Id*.

Next, the Authority argues that the home addresses of HCVP recipients are exempt under section 708(b)(30) of the RTKL because it will identify the "home address[es] . . . of . . . child[ren] 17 years of age or younger." 65 P.S. §67.708(b)(30). Militello testified that 1,919 minors reside in households that receive HCVP assistance and that disclosure of addresses of HCVP recipients would lead to the disclosure of those minors. As stated in *Van Osdol*, however, the requested information does not "directly identify the name, home address or date of birth of children who are 17 years of age or younger residing in Section 8 properties." 40 A.3d at 216.

Next, the Authority argues that the home addresses of HCVP recipients are exempt from disclosure pursuant to section 708(b)(6)(i)(A) of the RTKL because they would reveal "personal financial information." 65 P.S. §67.708(b)(6)(i)(A).

Militello testified that identifying an individual as an HCVP recipient would enable anyone to review publicly-available information to determine personal income information of the resident occupying the address. Polaha, however, is not seeking any information relating to the occupants of the properties in question.

Next, the Authority argues that the home addresses of HCVP recipients are exempt from disclosure pursuant to section 708(b)(1)(ii) of the RTKL because disclosure would likely "result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. §67.708(b)(1)(ii).

For the physical harm/personal security exemption to apply, a party must show by a preponderance of the evidence that disclosure of such information "'would be reasonably likely to result in a substantial and demonstrable risk of *physical harm* to or the *personal security* of an individual.'" *Delaware County v. Schaefer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012) (*en banc*) (citation omitted). The Authority argues that Militello testified that she has dealt with cases of HCVP participants facing discrimination, stigmatization, and threats to personal safety. At best, the Authority provided generalized anecdotal evidence that there are people who discriminate against poor people. The Authority produced no actual evidence of a demonstrable risk to specific individuals. *Id.* at 1158.

Next, the Authority argues that the disclosure of home addresses of HCVP recipients violates the federal Privacy Act.

Under section 102 of the RTKL, the definition of a "public record" does not include information that is "exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree." 65 P.S. §67.102. The Privacy Act prohibits public dissemination of Personally Identifiable Information (PII) collected by agencies that receive HUD funding. HUD Notice PIH 2010-15(HA). PII is defined as information that can be used to distinguish *or trace* an individual's

identity either by itself, or in conjunction with other personal or identifying information linked or linkable to a specific individual. HUD Notice PIH 2010-15(HA).

Polaha responds that HUD Notice PIH 2010-15(HA) does not specifically define a home address as PII.[4] Even if home addresses are PII, 5 U.S.C. §552(b) lists 12 exceptions where information may be disclosed without consent of an individual. Specifically, 5 U.S.C. §552(b)(7) allows an agency, upon receipt of a written request, to disclose a record to another agency or local government for a civil or criminal law enforcement activity. Here, Polaha sought the addresses to ensure that HCVP properties have been inspected and have current certificates of occupancy.

Finally, the Authority argues that disclosure of home addresses violates the HCVP recipients' right to privacy under the Pennsylvania Constitution.

An individual has a constitutionally protected expectation of privacy where: (1) the individual has '"a subjective expectation of privacy and (2) . . . the expectation is one that society is prepared to recognize as reasonable and legitimate."' *Commonwealth v. Duncan*, 817 A.2d 455, 463 (Pa. 2003) (citation omitted). Here, the trial court recognized that recipients of social services have a right to privacy in their addresses but concluded that Polaha has not asked for the addresses of social service recipients. (Trial Ct. Op., 1/14/16, at 21.) We agree with

---

[4] The information includes "name, Social Security number, biometric records, etc. alone or when combined with other personal identifying information which is linked or linkable to a specific individual such as date and place of birth, mother's maiden name, etc." HUD Notice PIH 2010-15(HA).

Polaha that in accordance with *Duncan*, there is no expectation of privacy attached to the requested addresses.  In the absence of a recognized property right, the disclosure of an address does not violate an HCVP recipient's constitutional rights.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Housing Authority,            :
                                      : No. 2391 C.D. 2015
                    Appellant         :
                                      :
              v.                      :
                                      :
Stephen Polaha                        :


# O R D E R


AND NOW, this 11<u>th</u> day of <u>August</u>, 2016, we hereby affirm the October 22, 2015, order of the Court of Common Pleas of Delaware County.


_____
ROCHELLE S. FRIEDMAN, Senior Judge